STATE OF WEST VIRGINIA *v.* HARRY STUTLER *and*
HERBERT LIND

(No. 7914)

Submitted September 11, 1934.  Decided October 2, 1934.

*Guy H. Burnside* and *Anderson W. Hall,* for plaintiffs in error.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for the State.

394

KENNA, JUDGE:

This writ of error was awarded to a judgment of the circuit court of Harrison County refusing a writ of error to a judgment of the criminal court of that county entered on the 25th day of March, 1933, sentencing Harry Stutler and Herbert Lind to confinement in the Harrison County jail for a period of ninety days and to pay a fine of $100.00 each. The defendants were indicted for the possession of moonshine liquor, and a bill of particulars was furnished by the state restricting the charge to eight gallons of whiskey possessed by the defendants on the 17th day of January, 1933, and concealed and hidden in a coal mine located about 200 yards from the dwelling house occupied by the defendants on the Nuzum farm near Palmer Lake on Simpson Creek in Harrison County. To this charge, the defendants pleaded not guilty and upon that issue were convicted and sentenced in the criminal court of Harrison County. There was a motion to quash the search warrant and the refusal of the trial court to do so is assigned as error. The other material assignments of error are (1) that at the trial, the state introduced evidence against the defendants that was procured by an illegal search, and (2) that the evidence adduced against the defendants, although perhaps sufficient to cast upon them a grave suspicion of guilt of the offense charged, is not sufficient to sustain the verdict.

· The case against the defendants is entirely circumstantial and is based altogether upon information procured by the officers executing a search warrant and at the same time arresting the defendants. From the evidence, it appears that Harry Stutler occupied a farm belonging to J. F. Nuzum near Palmer Lake in Harrison County, and that Herbert Lind made his home with Stutler. W. L. Wolford and H. L. Stillman, officers of the department of public safety, procured a search warrant on the 17th day of January, 1933, to search the Nuzum farm and "dwelling houses, buildings and outbuildings and premises", describing the farm as being that occupied by the defendant Stutler. The search warrant was introduced

in evidence. It directs the officers "to search and seize all liquors found therein, including any mixture of fermenting substances and material commonly known as 'mash'; together with all moonshine stills, and apparatus for the manufacture of liquors, vessels, bar fixtures, screens, glasses, bottles, jugs and other appurtenances apparently used in the sale, keeping or storing of liquors contrary to law, and to hold the same to be further dealt with according to law." The command is further that the officers arrest "all parties and persons found in said premises aforesaid." This warrant was returned executed, the return being in the following language: "Executed the within warrant on this 17th day of January, 1933, by searching the within premises and find one moonshine still & 3 Gallon moonshine liquor & 10 Gallons (moonshine) mash, & arresting Harry Stutler and Herbert Lind."

From the proof, it appears that the officers went to the Nuzum farm at noon where they found Stutler and Lind in the dwelling eating their dinner. They were not resisted, and searched the house, finding fifteen empty liquor bottles in various states of cleanliness, in one of which there was the odor of moonshine liquor. Lind had his boots on and Stutler was barefooted, with his high-top shoes drying in front of the fire. The footwear of both men seemed to be wet with sulphur water and to have fine coal dust upon them. The officers made no arrest at this time. After searching the dwelling, the officers followed what they described as a well-beaten path from the dwelling to an abandoned coal mine some 200 or 250 yards away from the dwelling. It appears from the proof that this abandoned mine was located upon an adjoining farm known as the Palmer farm, although it is likely that the officers, at the time of going there, thought they were still upon the premises occupied by the defendants, known as the Nuzum farm. This old mine was partly filled with sulphur water, and the officers borrowed Lind's boots to be used in going into it. In the mine, according to the evidence, but partly at variance with the return upon the search warrant, the

officers found about eight gallons of moonshine liquor, several barrels of mash, a copper boiler, a double boiler, a cooker (oatmeal), aluminum kettles, several baking powder cans, and an oil stove. Thereupon, the defendants were arrested, they having left the dwelling and being called back apparently to the mine, by the officers. Upon returning to the dwelling with the defendants in custody, about two and one-half hours after first going there, the officers found one or more baking powder cans of the same size and brand as those found in the mine, the bottom part of a double cooker or boiler, which fit a top part found in the mine, and some grates or lids that fit the oil stove which they had found in the mine. This seems to be all of the state's case.

On behalf of the defendants, it was testified by them that they had been digging coal in another mine on the hill out of sight and away from the house, which mine was located on the Nuzum place, on the morning that the officers arrived. They denied all knowledge of the articles found in the mine, including the moonshine whiskey, introduced proof tending to show that the path leading from the house which they occupied to the mine was intersected by other paths, and that, furthermore, the mine could be reached in one or more other ways, stated positively that the other part of the cooker, the top of which the officers stated they found at the house, was also at the house but not discovered by the officers in their search, and explained that the grates to the oil stove were grates of a stove that had been borrowed by Stutler, which had not been returned at the time the stove was taken back.

We do not believe that the trial court erred in overruling the motion to quash the search warrant. This motion was based on the fact that "said search warrant is vague and defective in form". The search warrant appears to be in the usual form and the premises to be searched are therein described as "that certain dwelling house, buildings and outbuildings and premises located on Nuzum's farm near Palmer Lake on Simpsons Creek occupied by one Harry Stutler in said county aforesaid".

It appears from the return indorsed upon the warrant that the officers did actually search the premises described therein, and the proof shows that the premises searched were known in the neighborhood as the Nuzum farm and that that farm was in fact occupied by Stutler. The premises searched were in Harrison County and were near Palmer Lake on Simpsons Creek. There is nothing in the proof that shows that there was any actual confusion in the execution of the warrant, nor is there anything in the proof tending to show that the description contained in the warrant was such that it would be difficult therefrom to single out and positively to identify the place desired to be searched. We do not think that it is necessary to go into an extended discussion of the well-recognized general rules that govern the sufficiency of description contained in search warrants and to attempt to balance case against case in reaching a conclusion. There is no hard and fast rule. The description must be such as to lead the officers to the right neighborhood, and, in that neighborhood, to describe distinctly and point out the premises to be searched. We see no reason in this case why those requirements have not been adequately met.

The next point that arises on the question of the search warrant is that the officers, having searched the dwelling, left and returned some two and one-half hours thereafter, and, at that time, found the baking powder cans, the bottom to the cooker, and the grates to the oil stove, about all of which they testified at the trial. It is contended by the defendants that this later search was illegal, and that the proof based upon it is not admissible in evidence. The difficulty is that when the officers testified at the trial to what they had found on this later search, there was no objection. We do not believe that this question as to the admissibility of what was found when the search was executed is properly raised by the motion to quash the search warrant. Neither do we believe that this question is properly raised by the defendants' motion to exclude the proof of the state and direct a verdict. The articles that were found at the dwelling

were not introduced in evidence. The officers simply re-counted what they had found, and to that there was no objection. We, therefore, are of opinion that the question, not having been raised at the trial, cannot be raised in this court.

But giving full credence to all of the testimony adduced on behalf of the state, is it sufficient to sustain the verdict? A beaten path led from the house to the mouth of the mine where the whiskey was found something more than two hundred yards away. The state's evidence shows that this path was not the only way of getting to the mine. There were baking powder cans, of the same brand and size, found both in the mine and at the dwelling, but they were of an ordinary brand and size of baking powder can, doubtless used generally in the neighborhood. The top part of a double boiler was found at the mine and the bottom part at the house, and it is testified that these fit. This is a very common utensil, and, ignoring the fact that the state's witnesses testified that no top to this utensil was found at the house and that the defendants' testimony was that the top as well as the bottom was at the house, there is no testimony to the effect that there were no bottoms for such utensils found at the mine or that search was made for such bottoms there. Even if there had been, we doubt that this circumstance would be sufficient upon which to base a conviction. As to the grates found at the dwelling which fit the stove found at the mine, and Stutler's virtual admission that he at one time had borrowed such a stove which he had returned, retaining the grates, we believe that this is the strongest item of the state's proof. Yet, we do not believe that this item of proof, even coupled with the proof concerning the baking powder cans and double boiler, is sufficient to exclude every reasonable hypothesis but that of guilt. If we say that it was Stutler's stove, how does that concern the conviction of Lind? But we think the proof that the grates fit, although sufficient to cast a very strong suspicion, falls short of proof of guilt of the possession of moonshine whiskey. Officer Stillman was the one who searched the mine. He tes-

tifies that he found the mash, whiskey and other paraphernalia about one hundred feet back into the mine, and in a separate point in his testimony he says that he found the stove in the mine without saying where. It may well be that under the circumstances shown here, the mind would have to labor more to reach the conclusion that both of these men are innocent than it would to reach the conclusion that one of them, or both of them, are guilty. This, however, is not the test. They are entitled to a real presumption of innocence in so far as their trial is concerned, and they are further entitled to the benefit of that presumption until every reasonable hypothesis but that of guilt has been excluded by the proof. We do not believe that this proof complies with this requirement as to either of these defendants. Certainly, it does not as to both. We, therefore, are of the opinion to reverse the judgment of the circuit court of Harrison County and of the criminal court of that county, set aside the verdict and award the defendants a new trial.

*Reversed.*